**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David McCRAW, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James MATHIS, Defendant–Appellant.**

Nos. 89–5412, 89–5420.

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1990.

Decided Nov. 30, 1990.

As Amended Dec. 6, 1990.

---

Todd Francis Sanders, argued (Robert C. Whitestone, Whitestone, Brent, Young & Merrill, on brief), Fairfax, Va., Gwendolyn M. Hickman, Falls Church, Va., argued, for defendants-appellants.

John Thomas Martin, Asst. U.S. Atty., argued (Henry E. Hudson, U.S. Atty., on brief), Alexandria, Va., for plaintiff-appellee.

Before HALL and WILKINS, Circuit Judges, and BULLOCK, United States District Judge for the Middle District of North Carolina, sitting by designation.

BULLOCK, District Judge:

The questions before the court on this appeal are whether the district court erred in denying appellants McCraw's and Mathis's motions to suppress evidence allegedly obtained as the fruit of illegal arrests. Because we conclude that the arrest of appellant McCraw was consistent with the requirements of the fourth amendment, we affirm the district court's denial of his motion to suppress. However, we conclude that the warrantless arrest of appellant

Mathis in his hotel room was in violation of the fourth amendment. Therefore, we reverse the order of the district court which denied Mathis's motion to suppress evidence obtained in his hotel room and remand for further proceedings consistent with this opinion.

## I.

On or about December 6, 1988, an informant told detectives of the District of Columbia Metropolitan Police Department that he, David McCraw, and a very large black male were to be involved in a drug-related meeting at the Stouffer's Concourse Hotel in Arlington, Virginia. Later, the detectives were advised by the informant that David McCraw gave money to a very large black male as prepayment for drugs which would be delivered at a later date. Federal agents attempted to corroborate the informant's tips through surveillance. On the evening of December 6, 1988, agents saw David McCraw and the informant in the vicinity of McCraw's apartment, approximately one-quarter mile from the Stouffer Hotel. The agents observed the informant and McCraw leave the apartment and drive to the vicinity of the hotel. Apparently, McCraw was never seen entering the hotel.

Federal agents did observe a very large black male exit the hotel on December 7, 1988. That same day the hotel manager confirmed that a very large black man by the name of "James Mathis" had registered at the hotel on December 6 and that this individual had visited the hotel on several prior occasions. Hotel employees indicated that there was usually a noticeable disparity between the weight of Mathis's bags between check-in and check-out.

On December 14, 1988, an undercover officer met with the informant and David McCraw. McCraw told them both that he was expecting a "shipment," which the officer interpreted to mean illegal drugs. At the same meeting, McCraw sold the officer a bag of a substance which the officer understood to be illegal drugs. A subsequent field test of the substance confirmed this fact.

On December 29, 1988, authorities were advised by a Stouffer employee that Mathis had registered at the hotel. Agents were informed by the hotel manager that Mathis was staying in Room 210. The agents arrived at the hotel and established surveillance in a room within viewing distance of Mathis's room. They were able to observe Mathis's room from the periphery of the peephole of the room they occupied.

By radio the agents told other agents involved in the investigation that an individual had entered Mathis's room. Shortly thereafter, that same individual was observed leaving the room with a suitcase. Moments later, McCraw was stopped by law enforcement officers with guns drawn and placed under arrest as he attempted to drive out of the hotel garage. On the back seat of McCraw's vehicle an officer observed a suitcase matching the description of the suitcase carried by Mathis at check-in, and matching the description of the suitcase carried by the individual seen leaving Room 210. McCraw denied ownership of the suitcase. The suitcase was opened and inside were numerous packages of white powder which the officers believed to be cocaine. Pursuant to verbal *Miranda* warnings McCraw made statements on the scene, and later made additional statements pursuant to written *Miranda* warnings.

Approximately one-half hour later five or six agents went to Room 210 and knocked on the door without announcing themselves. Mathis opened the door about halfway while standing inside his room. When Mathis saw the officers, he attempted to close the door. Several officers with weapons drawn forced their way inside and arrested Mathis. Within two minutes Mathis was handcuffed, given verbal *Miranda* warnings, and asked if he would consent to a search of his room. Mathis consented to the search and then answered questions from the arresting officers in his room. During the search a suitcase was found and opened which contained incriminating evidence.

Appellants Mathis and McCraw were indicted for possession of cocaine with intent to distribute. At an evidentiary hearing,

appellants moved to suppress their statements and the contents of both suitcases on the grounds that the evidence was obtained as the fruits of illegal arrests. The motions were denied by the district court and subsequently McCraw and Mathis entered guilty pleas conditioned upon preserving their objections to the denial of their motions to suppress. This appeal followed.

## II.

McCraw contends that his public, warrantless arrest was made without probable cause. The admissibility of any statements McCraw made at the scene and of the evidence found in the search of his vehicle is contingent upon the legality of his arrest. An appellate court must make an independent determination on the issue of the legality of an arrest; however, factual findings will not be disturbed unless they are clearly erroneous. *See United States v. Pelton*, 835 F.2d 1067 (4th Cir. 1987), *cert. denied*, 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *see also United States v. Carrillo*, 902 F.2d 1405 (9th Cir.1990); *United States v. Patrick*, 899 F.2d 169 (2d Cir.1990); *United States v. Price*, 888 F.2d 1206 (7th Cir.1989). An officer can make a public warrantless arrest as long as the officer has probable cause to believe that a felony has been committed. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Probable cause exists if "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Probable cause is based upon the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983); *United States v. Garcia*, 848 F.2d 58, 60 (4th Cir.), *cert. denied*, 488 U.S. 957, 109 S.Ct. 395, 102 L.Ed.2d 384 (1988). Only the facts and circumstances known at the time of the arrest may be considered by the court in reviewing probable cause to arrest. *Henry v. United States*, 361 U.S. 98, 103, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *Garcia*, 848 F.2d at 59–60.

A combination of tips from an informant and first-hand corroborative observation of suspicious activity will provide probable cause for an arrest. *See Alabama v. White*, —— U.S. ——, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (anonymous informant and *Terry* stop); *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (anonymous informant and probable cause to search); *United States v. Chavez*, 902 F.2d 259 (4th Cir. 1990) (confidential informant and probable cause to search); *United States v. Porter*, 738 F.2d 622 (4th Cir.1984) (anonymous informant and *Terry* stop); *United States v. Shepherd*, 714 F.2d 316 (4th Cir.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1914, 80 L.Ed.2d 462 (1984) (confidential informant and probable cause to arrest). Once the informant told agents that McCraw would be engaging in a drug transaction with a very large black male at a specific hotel the agents naturally would look for any other facts during the course of the investigation which would corroborate the information supplied by the informant. The agents had observed their informant and McCraw in the vicinity of the Stouffer Hotel on December 6; they had verified that Mathis was registered at the hotel on that same date; they had information about the disparity in weight of Mathis's bags; an undercover officer had purchased drugs from McCraw on December 14, at which time McCraw talked about an upcoming shipment; on December 29, the day of McCraw's arrest, agents knew Mathis had registered at the Stouffer Hotel and that another black male had entered his room empty-handed and emerged carrying a suitcase; moments later McCraw attempted to drive out of the hotel garage.

A combination of the information from the informant and the first-hand corroborative observation by the agents of suspicious activity on the part of McCraw pro-

vided probable cause for his arrest.[1] *See Shepherd,* 714 F.2d at 317; *see also White,* —— U.S. ——, 110 S.Ct. 2412; *Gates,* 462 U.S. 213, 103 S.Ct. at 2319; *Chavez,* 902 F.2d 259. Even though certain of the observed activities on the part of McCraw constituted innocent behavior, when those activities so completely corroborated the informant's tips the innocent behavior would have provided a basis for probable cause. *See Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983) ("innocent behavior frequently will provide the basis for a showing of probable cause").

▪ Incident to an automobile occupant's lawful arrest, police may search the passenger compartment of the vehicle and examine the contents of any containers found within the passenger compartment. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Consequently, the statements at the scene and the evidence seized incident to the legal arrest of McCraw were admissible. The district court properly denied McCraw's motion to suppress.

### III.

▪ Mathis's suppression motion presents the question of whether officers without an arrest warrant but with probable cause may, absent exigent circumstances, force their way into a hotel room and arrest the occupant who, from inside his room, partially opens the door to determine the identity of officers knocking on the door. We hold that a person does not surrender his expectation of privacy nor consent to the officers' entry by so doing, and that his arrest inside his room under such circumstances is contrary to the fourth amendment and the United States Supreme Court's decision in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

▪ An arrest warrant is always required for an arrest inside the arrestee's home, even when probable cause exists, absent exigent circumstances. *Payton,* 445 U.S. 573, 100 S.Ct. 1371. The *Payton* warrant requirement also applies to guest rooms in commercial establishments. *United States v. Carrion,* 809 F.2d 1120, 1127–28 (5th Cir.1987); *United States v. Baldacchino,* 762 F.2d 170, 175–76 (1st Cir. 1985); *United States v. Newbern,* 731 F.2d 744, 748 (11th Cir.1984); *United States v. Jones,* 696 F.2d 479, 486–87 (7th Cir.1982), *cert. denied,* 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). An arrest warrant is not required when the arrest is made in public based on probable cause.[2] *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976).

The government contends that Mathis's arrest is governed by *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), in which the United States Supreme Court characterized the doorway of an arrestee's home as a public area in which the arrestee has a diminished expectation of privacy. In *Santana,* the suspect, "Mom" Santana, had been identified as the supplier of drugs by another arrestee minutes earlier. The police then drove to Santana's residence. As they drove up, they saw Santana standing on the threshold of the doorway of her home, holding a brown paper bag which officers believed contained drugs. The officers drove to within fifteen feet of the suspect and exited their van shouting, "Police." Santana retreated into the vestibule of her home where she was arrested. The Supreme Court held that the doorway was not an area where the suspect had any expectation of privacy and that when she knowingly exposed herself to the public she lost the

---

1. The government argues that regardless of the probable cause to arrest McCraw for the Mathis drug transaction there was probable cause to arrest him for the prior drug sale to an undercover agent. The government contends that McCraw cannot choose the time and place of his subsequent arrest once the police actually observe the commission of a felony. We need not address this issue because the arrest of McCraw and the search of his vehicle for the Mathis drug transaction were consistent with the fourth amendment.

2. Following the arrest of McCraw and his statements made pursuant to verbal *Miranda* warnings, the agents had probable cause to arrest Mathis.

fourth amendment protection applicable to her home. *Id.* at 42, 96 S.Ct. at 2409. The Court went on to hold that the police were justified in pursuing her into the vestibule of her home without a warrant because they had a realistic expectation that any delay would result in the destruction of evidence. *Id.* at 42–43, 96 S.Ct. at 2409–10.

The Supreme Court identified the case as one involving a true "hot pursuit." *Santana*, 427 U.S. at 42–43, 96 S.Ct. at 2409–10. The need to act quickly to prevent the destruction of evidence justified the warrantless entry. *Id.* at 43, 96 S.Ct. at 2410. The Court concluded that "hot pursuit" means some kind of chase, though not to the extent of some "extended hue and cry 'in and about [the] public streets.'" *Id.* (quoting the district court). The pursuit may end almost as soon as it begins. *Id.* If the suspect sees the police, and the authorities have a realistic expectation that any delay will result in the destruction of evidence, they may enter without a warrant to effect an arrest. *Id.*

The *Santana* case is distinguishable from the present case in that the arrestee in the present case was not standing on the threshold of the doorway at the time the agents arrived. Instead, Mathis came to the door in response to the agents' knocking. Moreover, Mathis did not relinquish completely his expectation of privacy. At trial, government witnesses did not even contend that Mathis was on the threshold of the doorway, instead admitting that he opened the door only halfway to determine who was knocking, attempted to close it,

and that they forced their way inside to make the arrest.[3] By opening the door only halfway, Mathis did not voluntarily expose himself to the public to the same extent as the arrestee in *Santana*. He certainly did not consent to the officers' entry into his room to arrest him.

A recent Supreme Court case suggests that the police may not forcibly or coercively gain admittance to a private residence to effect an arrest simply by obtaining the arrestee's presence at the door. In *New York v. Harris*, —— U.S. ——, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), police officers with guns drawn knocked on the arrestee's apartment door but received no response. When the suspect looked out of the peephole of the door, one of the officers displayed his badge. The suspect then opened the door and allowed the officers to enter. Once inside, the officers asked the suspect a series of questions which resulted in an admission of guilt. The officers then formally arrested the suspect, although they had probable cause for the arrest before entering the apartment.

■ The Supreme Court accepted the state court's finding that the suspect did not consent to the officers' entry and said, "It is also evident, in light of *Payton*, that arresting Harris in his home without an arrest warrant violated the Fourth Amendment." *Harris*, 110 S.Ct. at 1642.[4] The Court further explained that *Payton* drew a line at the entrance to the home which the police could not breach without a warrant, absent exigent circumstances.[5] *Id.*

---

**3.** Detective Joseph Brenner, one of the arresting officers, testified at trial as follows:

Q How far did defendant Mathis open the door?

. . . .

A He opened the door about halfway.

. . . .

Q After he opened the door, what happened?
A We forced our way in and placed him under arrest, because by the time he opened the door, he could see who we were.
Joint Appendix at 113.

**4.** A similar situation was before the Eleventh Circuit in *United States v. Edmondson*, 791 F.2d 1512 (11th Cir.1986). Officers with probable cause to arrest but without search or arrest warrants knocked on the door of the apartment

where the suspect had previously been seen. When the suspect looked out the window an agent yelled, "FBI. Open the door." The suspect opened the door and allowed the agents to enter the apartment, where he was arrested. The court of appeals agreed with the district court that the suspect did not consent to the officers' entry and that his arrest was illegal; physical evidence seized at the time was suppressed.

**5.** We recognize that several of the circuits have held that "[t]he doorway of an individual's home or hotel room may be a public place for the purpose of making a warrantless arrest if the individual has come to stand in the doorway voluntarily." *Duncan v. Storie*, 869 F.2d 1100, 1102 (8th Cir.), *cert. denied*, —— U.S. ——, 110

In the present case, the trial court found that there were no exigent circumstances, and we agree. Mathis did not know of McCraw's arrest or of the officers' presence, and his room was under constant surveillance. He had no reason to destroy evidence, and if he came out of his room he could have been promptly apprehended in the hallway, a public place. Any risk of the destruction of evidence when Mathis retreated further into his room was precipitated by the agents' themselves when they knocked on the door.

The warrant requirement for an arrest in the home is imposed to protect the home, and anything incriminating law enforcement officers gain as a result of an illegal arrest taking place in the home should be excluded to deter such conduct. *Harris*, 110 S.Ct. at 1644. Mathis's contemporaneous consent to the search of his hotel room and the incriminating statements made in the room were the product of his illegal arrest in his room. Assuming that the consent to search and hotel room statements were voluntary by fifth amendment standards, the proximity in time and place between the arrest and the search and statements and the absence of intervening circumstances nevertheless require suppression of this evidence to protect the physical integrity of the home and to vindicate the purpose of the fourth amendment. *See Harris*, 110 S.Ct. at 1643–44. *See also Taylor v. Alabama*, 457 U.S. 687, 690, 102

S.Ct. 152, 107 L.Ed.2d 110 (1989); *see United States v. Carrion*, 809 F.2d 1120, 1128 (5th Cir. 1987); *United States v. Whitten*, 706 F.2d 1000, 1015 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *United States v. Burns*, 624 F.2d 95, 101 (10th Cir.), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). In the present case, Mathis did not stand in the doorway. Even assuming that he did stand in the doorway, his presence at the door was solicited by the agents and, therefore, was not completely voluntary. Furthermore, these cases precede the most recent discussion by the Supreme Court in *Harris* of warrantless arrests in the arrestee's home. The *Harris* court clearly reiterated the pronouncement from its earlier holding in *Payton* that a line is drawn at the entrance to the home which the police may not breach, absent exigent circumstances. *See Harris*, 110 S.Ct. at 1643.

Many cases have invalidated "doorway" arrests because of objectionable police behavior.

S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1981); *Dunaway v. New York*, 442 U.S. 200, 217, 99 S.Ct. 2248, 2259, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975).

We affirm the district court's denial of McCraw's motion to suppress because the evidence obtained from his vehicle followed a search incident to a legal arrest; his subsequent statements are also admissible. We reverse the district court's denial of Mathis's motion to suppress the evidence obtained in his hotel room immediately following his arrest in violation of the fourth amendment, and remand for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

WILKINS, Circuit Judge, concurring in part and dissenting in part:

I concur in the result reached by the majority with respect to its treatment of defendant McCraw but disagree with its conclusion regarding the suppression of evidence obtained following Mathis' arrest. This evidence ultimately might prove to be inadmissible after inquiry by the district court; however, the gross deficiency of the record concerning the events following Mathis' arrest should prevent this court from drawing conclusions as to its admissi-

*See United States v. Al Azzawy*, 784 F.2d 890, 893 (9th Cir.) (coercive behavior), *cert. denied*, 476 U.S. 1144, 106 S.Ct. 2255, 90 L.Ed.2d 700 (1986); *United States v. Morgan*, 743 F.2d 1158, 1166 (6th Cir.1984) (coercive behavior), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985); *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir.1980), *aff'd*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (deceptive practices); *United States v. Houle*, 603 F.2d 1297, 1300 (8th Cir.1979) (deliberate delay); *accord Duncan v. Storie*, 869 F.2d at 1102; *United States v. Davis*, 785 F.2d 610, 615 (8th Cir.1986). The officers' conduct in this case, although not inherently deceptive, does call into question their good faith efforts to observe the warrant requirement for an arrest in a private residence. *See United States v. George*, 883 F.2d 1407, 1414 n. 14 (9th Cir.1989); *United States v. Kunkler*, 679 F.2d 187, 191 n. 3 (9th Cir.1982).

bility without a remand for proper development of the record.

The majority is correct that reliance by the district court upon *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), was misplaced. The district court found no exigent circumstances justifying the entry into Mathis' hotel room, a finding we must accept unless clearly erroneous, and a finding essential to an application of *Santana*. Thus, the law enforcement officers were required to obtain a warrant prior to forcibly entering Mathis' hotel room, and their failure to do so rendered the arrest unlawful. *See Payton v. New York*, 445 U.S. 573, 588–89, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639 (1980). The majority's discussion of doorway arrests is, in my view, unnecessary to the opinion.

The language used by the majority in discussing the suppression of evidence obtained in the voluntary consent search of the hotel room and the voluntary statements made by Mathis could be read to establish a *per se* rule of exclusion of all evidence obtained in the "home" following a *Payton* violation. I do not read *Payton* or *New York v. Harris*, — U.S. —, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990), to compel such a result nor do I read *Harris* to completely erase the attenuation analysis recognized by *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and its progeny following a *Payton* violation.

In *Harris*, the Supreme Court specifically limited its inquiry to whether an inculpatory statement made by the defendant at a police station following an arrest made in violation of *Payton* should be suppressed. 110 S.Ct. at 1642. Finding that the statement was admissible, the Court held that an attenuation analysis was not required following a *Payton* violation when the defendant made a statement outside the home. *Id.* at 1643–44. The Court reasoned that the underlying purpose for the exclusionary rule was to deter police from failing to comply with the warrant requirement. This purpose would not be furthered by suppressing evidence obtained

outside the home, since police would "know that a warrantless entry will lead to the suppression of any evidence found or statements taken inside the home." *Id.* at 1644.

Viewed in context, this language from *Harris* does not establish a *per se* rule mandating suppression of evidence obtained in the home that, under a traditional attenuation analysis, would be free from the taint of the illegal arrest. The goal of deterrence that the exclusionary rule fosters would not be furthered by the suppression of such evidence because, by definition, such evidence must be sufficiently attenuated from the taint of the illegal activity to be admissible.

Likewise, surely *Harris* did not nullify the inevitable discovery doctrine. *See Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988); *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). *Harris* does not mandate the exclusion of evidence obtained in the "home" following a *Payton* violation that would be admissible under the inevitable discovery doctrine because, again, no goal of the exclusionary rule would be furthered by the suppression.

The record before this court is virtually void of facts regarding what transpired after the arrest. Indeed, the record is so deficient that it does not reveal what evidence was discovered or what statements were made. As the majority opinion notes, Mathis was handcuffed and given *Miranda* warnings within two minutes following his arrest. However, the record is silent concerning the temporal proximity of the arrest to the officers' request to search and to Mathis' statements. The record even suggests that some of the statements which Mathis sought to suppress were made outside the hotel room. Similarly, the events following Mathis' arrest are not sufficiently developed to permit this court to infer that intervening circumstances were absent. The circumstances surrounding and following events in the hotel room are not sufficiently developed for this court

to draw conclusions about the admissibility of any of the evidence.

It does appear on the meager record before us that officers obtained and executed a search warrant for the hotel room. Nevertheless, the record does not disclose precisely when the warrant was obtained, what facts the magistrate was given to support a finding of probable cause, or when the warrant was executed. Consequently, the record is insufficient to permit the court to conduct an inevitable discovery analysis.

The majority recognizes the inadequacy of the record created by the breadth of Mathis' motion to suppress and the dearth of facts in the record concerning the events following Mathis' arrest. It attempts to solve the dilemma by limiting reversal to evidence obtained in the hotel room and permitting further proceedings consistent with the opinion on remand. However, the reason which necessitates further proceedings to unravel that evidence which is admissible under the rule announced in *Harris* applies equally to require further inquiry by the district court into the facts which are needed to essay an attenuation analysis and an application of the inevitable discovery doctrine.

The district court found that the arrest of Mathis was lawful and that his consent to the search and his statements were voluntary. Thus, the court had no occasion to consider the admissibility of the evidence on any other basis. I would remand this issue with instructions to fully develop the record and rule on the admissibility of the evidence after conducting an attenuation analysis, applying the rule of *Harris* to statements made outside the hotel room, and considering the application of the inevitable discovery doctrine. The evidence may be found inadmissible in the final analysis, but we should not draw such a conclusion on this record without allowing a thorough inquiry by the district court.