928 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William P. PARHAM, Jr., Defendant-Appellant.
 No. 90-5602.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 7, 1990.
Decided March 19, 1991.
As Amended May 6, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Robert G. Doumar, District Judge. (CR-89-110-N)
 William Mills Krieger, Wingard & Krieger, Newport News, Va., for appellant.
 Albert David Alberi, Special Assistant United States Attorney, Norfolk, Virginia, for appellee; Henry E. Hudson, United States Attorney, Norfolk, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL and PHILLIPS, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, Sitting by Designation.
 PER CURIAM:
 
 
 1
 Pursuant to a plea agreement, William Peter Parham, Jr., pleaded guilty in the United States District Court for the Eastern District of Virginia to one count of conspiracy to distribute cocaine, 21 U.S.C. Sec. 846. Parham now appeals his conviction and sentence on several grounds: he contends (1) that the police illegally searched his home; (2) that under the federal sentencing guidelines the district court erred by awarding him a two-point penalty for possession of a dangerous weapon during commission of the offense; and (3) that the court also erred under the Guidelines when it failed to give him credit for giving substantial assistance to the government in prosecuting or investigating another. Finding no merit in these issues, we affirm.
 
 I.
 
 2
 On the night of March 3, 1989, William P. Parham, Jr., entered his home at 1605 Tewksbury Court, Virginia Beach, Virginia, and found it being burglarized by a Joseph Warren. Parham immediately dialed "911" to report the burglary and then subdued Warren, taking from him a derringer. An officer of the Virginia Beach Police Department arrived shortly thereafter, entering the house through an open front door. Upon entering, the officer, Kim Willis, heard two males shouting at each other, with one declaring, "I have a 9mm here and if you move, I'll shoot you! Man, I should kill you for this!" Officer Willis located the men, finding one standing in the laundry room by a washing machine while the other was sitting nearby on the floor in a small adjacent bathroom. At Willis' request, the man standing withdrew into the kitchen where he identified himself as the homeowner, William P. Parham, and produced from his pocket the derringer taken from Warren. Willis instructed Parham to go outside and wait for other officers, which he did.
 
 
 3
 Willis thereafter returned to Warren and, after ordering him to lie face down on the floor, unsuccessfully searched for the 9mm handgun she had heard mentioned. When a second officer arrived, Willis handcuffed and physically searched Warren, but again did not find the handgun. Willis then continued her search for the gun and in the process lifted the lid of the washing machine. Inside, she found a bag of marijuana, which she pulled out to show a second officer and then returned to the machine. Willis then went to administer first aid to Warren, who was bleeding from scalp wounds, and while doing this Warren whispered to her that he was there because Parham was "a big drug dealer; he has cocaine in the house and upstairs."
 
 
 4
 Willis then called for a narcotics detective to assist in the investigation. In response to such call, Detective Dennis Santos arrived at the scene. After informing Santos of Warren's statement, Willis showed the detective the marijuana inside the washing machine. Santos noticed a bag of cocaine also in the machine, as well as a large amount of U.S. currency in plain view in the bathroom. Using this information, Santos obtained a search warrant for the house and a thorough search was conducted. Recovered during this search were $17,901 in U.S. currency, cocaine, marijuana, steroids, a triple beam scale, and the 9mm handgun, which had been sitting on top of a sideboard in the kitchen.
 
 
 5
 Parham was arrested, and, after being advised of his Miranda rights, he confessed in detail about being a large-scale cocaine dealer who was able to sell a kilogram of cocaine every eight days "like clockwork." Thereafter, he was charged under state law and released on bond. While out on bond, Parham was again arrested, this time by the Norfolk police while he was apparently distributing cocaine to his street-level dealers.
 
 
 6
 After this second arrest, but based upon information gleaned from the previous search and confession, a federal grand jury handed down a two-count indictment charging Parham with conspiracy to distribute cocaine and possession of cocaine with intent to distribute. Parham then moved to suppress his confession and the evidence confiscated from his house, because he felt these were fruits of the poisonous tree originally stemming from the first search of the washing machine, which he contended was illegal. The district court denied the suppression motion on October 5, 1989, finding that Officer Willis' actions were reasonable. Shortly thereafter, Parham entered into a plea agreement whereby he agreed to plead guilty to a superseding criminal information only charging him with conspiracy to distribute more than 500 grams of cocaine. This agreement did not reserve defendant's right to appeal the court's denial of his suppression motion.
 
 
 7
 Parham pleaded guilty to the one count and he was sentenced on December 20, 1989. Before sentencing, the probation officer computed Defendant's offense level as 38, which included a four-level addition for being an organizer or leader of an extensive criminal activity and a two-level addition for possessing a dangerous weapon (the 9mm handgun) during commission of the offense. Defendant objected to these increases, while the government objected to the probation officer's two-level decrease for acceptance of responsibility. At sentencing, the district court decreased Parham's offense level four levels, from 38 to 34, finding that defendant was not an organizer or leader of an extensive criminal activity. The court, though, left intact the two-level increase for possession of a dangerous weapon and the two-level decrease for acceptance of responsibility. Also, the sentencing court did not follow defendant's suggestion that it depart from the guidelines because defendant had provided substantial assistance in the investigation or prosecution of another. The court sentenced Parham to 170 months imprisonment, five years supervised release, and a fine of $30,000.
 
 II.
 
 8
 Parham's first contention on appeal is that the district court erred when it denied his motion to suppress. We find, though, that defendant waived all objections to the search of his house and its subsequent repercussions when he unconditionally pleaded guilty. Although Parham in constructing a plea agreement could have reserved the right to appeal this issue with approval of the court and consent of the government, this he did not do. Fed.R.Crim.P. 11(a)(2); United States v. McCraw, 920 F.2d 224, 227 (4th Cir.1990); United States v. Flowers, 912 F.2d 707, 709 (4th Cir.1990).
 
 
 9
 Defendant's second issue on appeal concerns the two-level increase given him for possessing a dangerous weapon during the commission of his offense. The district court found that a dangerous weapon, specifically a 9mm handgun, was present in Parham's house along with large amounts of money and drugs, and inferred from this that the gun was there to protect these possessions. We find this ruling not to be clear error, especially considering the fact that Parham was overheard threatening to use the gun against a burglar who was in the house because it was the home of a large drug dealer.
 
 
 10
 Finally, Parham contends that the court should have departed from the sentencing guidelines and given him a reduced sentence because he supposedly provided substantial assistance in the investigation or prosecution of another. While a court may depart from the guidelines if a defendant provides substantial assistance, this will only be considered "[u]pon motion of the government." Sec. 5K1.1. Here, the government did not so move, because Parham did not provide any useful information; the defendant could only provide authorities with the first names and physical descriptions of two of his suppliers. We thus find that no error was committed.
 
 
 11
 Accordingly, the judgment of the district court is
 
 
 12
 AFFIRMED.