983 F.2d 1058
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Darnell KEARNEY, Defendant-Appellant.
 No. 92-5260.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1992
Decided: January 15, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CR-91-122-R)
 Elizabeth Dashiell Scher, MORCHOWER, LUXTON & WHALEY, Richmond, Virginia, for Appellant.
 Nicole Miller Healy, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.
 Richard Cullen, United States Attorney, Andrew G. McBride, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Charles Dee Griffith, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant, Paul Darnell Kearney, was charged in a three-count indictment with one count of aiding and abetting the possession with the intent to distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C § 841(a)(1), one count of aiding and abetting the possession with the intent to distribute cocaine base (crack) in violation of 18 U.S.C. § 2 and 21 U.S.C § 841(a)(1), and one count of possessing a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. §§ 2 and 924(c)(1). Following the district court's denial of his suppression motion, Kearney entered a conditional plea of guilty to all three counts pursuant to Fed. R. Crim. Proc. 11(a)(2), reserving the right to appeal the denial of his suppression motion. On appeal, Kearney contends the police lacked probable cause to arrest him and that the evidence seized pursuant to his unlawful arrest should be suppressed. Finding no merit to Kearney's argument, we affirm.
 
 
 2
 * On June 26, 1991, Detectives Wade and Redford of the Richmond Police Department and a Special Agent of the Virginia State Police began an undercover operation employing an undercover state trooper (undercover officer) and a confidential informant (CI). With the assistance of a contact, the undercover officer and the CI went to Joe Wright's apartment located on 3357 Dill Avenue in Richmond, Virginia, in order to procure cocaine.
 
 
 3
 Upon arrival, Wright informed the CI, who was wearing a body wire,[1] that he could supply him with cocaine, but that it would take some time for his source to arrive. The source, identified as a black male named "Paul," arrived with the cocaine and the sale was consummated. "Paul" was witnessed leaving the apartment in a Ford Bronco with Virginia license plate number BJO-932.[2] It was later determined that the Ford Bronco was registered to Wright.
 
 
 4
 On July 12, 1991, Detectives Redford and Wade observed the Ford Bronco in downtown Richmond. At that time, they called for a marked patrol unit to stop the Ford Bronco and identify the driver. The Ford Bronco was stopped, and the driver was identified as Paul Kearney. A short time later, Virginia State Police Trooper Taylor Blanton informed Detective Wade that Kearney was involved in the distribution of drugs in Norfolk, Virginia.
 
 
 5
 On October 1, 1991, the Ford Bronco was observed again travelling on Broad Street by Detectives Wade and Redford, and Detective Sergeant Reed. The Ford Bronco was repainted in a different color, but bore the same license plates. During the October 1 observation, the driver of the Ford Bronco could not be identified.
 
 
 6
 On October 2, 1991, another controlled purchase of cocaine was arranged between the CI and Wright. The purpose behind this controlled purchase was to arrest Kearney. Wearing a body wire, the CI arrived at Wright's apartment at approximately 2:15 p.m., while Special Agent Jim Baird, Detective Sergeant Reed, and Detectives Redford and Wade set up surveillance in the immediate area. When the CI inquired about purchasing cocaine, Wright informed the CI that he would have to contact his source. Wright paged his source and informed the CI that the delivery would be made in about fifteen to twenty minutes, but did not indicate the identity of the individual making the delivery or the manner in which it would arrive.[3]
 
 
 7
 Approximately fifteen minutes later, the surveillance team observed the Ford Bronco with Virginia license plates BJO-932 approaching Wright's apartment. At that time, the Ford Bronco was driven by a female with a male passenger in the front seat. After the Ford Bronco stopped at a stop sign near Wright's apartment, Kearney exited the Ford Bronco, reached into the back of the vehicle, removed something from behind the passenger side of the vehicle, placed the thing in his pocket, and began walking toward Wright's apartment.
 
 
 8
 Kearney was stopped by Special Agent Baird before he could get to the sidewalk. At the same time, the Ford Bronco was stopped by Detective Wade as it was trying to pull away. Kearney, who had walked approximately ten to fifteen feet away from the vehicle, was brought back to the Ford Bronco and a pat-down of Kearney revealed two bags of crack and one bag of cocaine in his pocket. A search of the Ford Bronco was then conducted and a nine-millimeter pistol was recovered under the driver's seat. Detective Wade did not positively identify Kearney until after the search.
 
 
 9
 On October 17, 1991, a federal grand jury in the Eastern District of Virginia returned a three-count indictment against Kearney. Count one charged Kearney with aiding and abetting the possession with the intent to distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Count two charged Kearney with aiding and abetting the possession with the intent to distribute crack in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). Count three charged Kearney with possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. §§ 2 and 924(c)(1).
 
 
 10
 On December 30, 1991, Kearney moved to suppress the cocaine, the crack, and the firearm. Kearney's main contention was that his warrantless arrest was made without probable cause and, therefore, the search could not be characterized as a search incident to a lawful arrest. The government countered by arguing that the search was permissible because the police had probable cause to arrest him.
 
 
 11
 After a hearing, the district court denied Kearney's motion to suppress on the basis that the police had probable cause to arrest Kearney and that the search of his person and the Ford Bronco were valid searches incident to a lawful arrest. At that time, Kearney entered a conditional plea of guilty to the three charges enumerated in the indictment, reserving the right to appeal the denial of his suppression motion. The district court sentenced Kearney to 120 months' imprisonment.
 
 
 12
 Kearney appeals.
 
 II
 
 13
 All warrantless searches "are per se unreasonable under the Fourth Amendment-subject only to a few specifically established and welldelineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such exception is a search incident to a lawful arrest. United States v. Robinson, 414 U.S. 218, 224 (1973). Kearney argues, as he did below, that the police lacked probable cause to arrest him and, therefore, the search could not be characterized as a search incident to a lawful arrest. Kearney concedes, however, if the police had probable cause to arrest him, the cocaine, the crack, and the firearm should not be suppressed.
 
 
 14
 A public warrantless-arrest is permissible provided the police have probable cause to believe a felony has been committed. United States v. McCraw, 920 F.2d 224, 227 (4th Cir. 1990) (citing United States v. Watson, 423 U.S. 411 (1976)). Probable cause involves a practical common sense determination about whether, given all the circumstances present, it is reasonably probable to a prudent man that the suspect has "committed or was committing an offense." McCraw, 920 F.2d at 227 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Whether probable cause for Kearney's arrest existed is based upon the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 230-31 (1983). A reviewing court is limited to examining those facts known at the time of the arrest in determining whether probable cause exists. McCraw, 920 F.2d at 227 (citations omitted). The standard of review applied in determining whether probable cause existed for Kearney's arrest is de novo. Id. However, the district court's factual findings will not be disturbed unless clearly erroneous. Id.
 
 
 15
 In the present case, the police knew that Wright was a drug dealer and still actively involved in the distribution of drugs. In addition, the police also knew that drugs were going to be delivered approximately fifteen to twenty minutes after Wright paged his source. Unlike information derived from a known or unknown informant that is arguably less reliable, the source of this information was the seller himself-Wright. The police were also aware that the Ford Bronco was owned by Wright and recently used in the distribution of drugs. Finally, upon seeing the Ford Bronco approach the apartment complex, it wasrea sonable to assume that the October 2 transaction would proceed in a similar fashion to the June 26 transaction.
 
 
 16
 With these facts in mind, we conclude that there was a fair proba bility that the individual getting out of the Ford Bronco, a vehicle recently connected with the distribution of drugs, walking toward an apartment currently employed in the distribution of drugs, at a time and a place where the delivery was to occur, was the individual scheduled to deliver the drugs to Wright's apartment. Stated differ ently, at the time of the arrest, the police harbored "sufficient [infor mation ]to warrant a prudent man in believing that [Kearney] had committed or was committing an offense." McCraw, 920 F.2d at 227 (quoting Beck, 379 U.S. at 91). Thus, the police had probable cause to arrest Kearney.[4]
 
 III
 
 17
 For the reasons herein, appellant's conviction is affirmed.
 
 AFFIRMED
 
 
 [1]
 The body wire enabled the undercover operation to monitor the CI's conversations with Wright
 
 
 [2]
 At the suppression hearing, Detective Wade testified that he believed there was a black female passenger with "Paul" in the Ford Bronco
 
 
 [3]
 Wright indicated to the CI that the source would probably not be driving a "Blazer," which the police understood to mean the Ford Bronco
 
 
 [4]
 Kearney argues that the government's case is fatally undermined by the fact that Wright indicated to the CI that the source would probably not be arriving in the Ford Bronco. We find no merit to Kearney's argument. Wright's statement cannot be viewed in a vacuum. Under the "totality of the circumstances" test, it must be weighed against the evidence that the Ford Bronco was used in an identical drug transaction in the past involving the same parties, the Ford Bronco arrived as scheduled, and the occupant of the vehicle walked toward Wright's apartment. In this light, Wright's statement appears to be inconsequential