**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                              No. 97-4547

PERREN O. AVERY,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Charles H. Haden II, Chief District Judge.
(CR-97-21)

Submitted: March 17, 1998

Decided: March 30, 1998

Before WIDENER, MURNAGHAN, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William D. Turner, III, CRANDALL, PYLES & HAVILAND,
L.L.P., Lewisburg, West Virginia, for Appellant. Rebecca A. Betts,
United States Attorney, John L. File, Assistant United States Attor-
ney, Charleston, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Perren Avery appeals his conviction and sentence for distributing cocaine base in violation of 21 U.S.C. § 841(a)(1) (1994). We affirm.

On December 31, 1996, an agent with the Regional Unified Drug Enforcement Task Force received an anonymous tip that a white pregnant female and two black males were selling drugs from a blue Camaro in the vicinity of Barber Avenue, Beckley, West Virginia. On January 6, 1997, a reliable confidential informant ("CI") met with Task Force agents and informed them that she had recently accompanied two black males known to her as Pete and Frank in a blue Camaro, and that these men possessed four ounces of cocaine. The CI described the man she knew as Pete as a tall black male with a very large build and long bushy hair. The agents then gave the confidential informant two-hundred dollars and a body-recording device for the purpose of making a controlled buy from these two males. Shortly thereafter the CI located the blue Camaro and approached Pete and Frank who were standing with other persons outside the vehicle. Via the body wire, the agents heard the CI inquire about purchasing various quantities of cocaine, heard two men get in the CI's car and travel to a nearby intersection, and then heard the CI purchase two-hundred dollars worth of cocaine. The agents also heard the two men tell the CI that they could sell her additional cocaine if she met them at Vanessa Brooks' residence later that day. Because they were parked out of view of the Camaro, the agents never saw Pete, Frank, or any of the persons standing outside the blue Camaro. They did, however, see the blue Camaro pull away shortly after the CI had finished making her purchase.

The agents and the CI then returned to the Beckley police range where the CI informed the agents that she had purchased the cocaine from Pete. She also provided a description of Pete, and stated that

2

Pete and Frank had approximately half a kilogram of cocaine between them. Approximately thirty-five minutes later the agents located the blue Camaro parked with no persons in or around the vehicle. After momentarily losing sight of the Camaro, the agents saw the car drive off. They then followed it for a few blocks and pulled it over. Approaching the Camaro with their guns drawn, the agents ordered the driver and two passengers out of the vehicle. As Avery exited the Camaro, the agents recognized him as matching the description that the CI had provided of the man named Pete. A search incident to Avery's arrest uncovered $1860 in currency from his inside jacket pocket. Subsequent analysis revealed that the $1860 seized from Avery included the two-hundred dollars from the controlled transaction.

Following Avery's arrest Task Force agents searched Vanessa Brooks' apartment but found no cocaine. Shortly thereafter, the CI called the agents from Brooks' apartment and informed the officers that Brooks had the cocaine that they were looking for. Upon returning to the apartment, Brooks gave the agents 23.5 grams of cocaine which she had hidden in her vagina, and told the officers that Avery had put the cocaine in her freezer earlier that day.

Avery contends that he was arrested without probable cause and therefore the district court erred in denying his motion to suppress the $1860 found in his possession at the time of his arrest. This court reviews de novo a district court's determination of probable cause under the Fourth Amendment. See United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). An officer has probable cause to make a warrantless arrest when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979). Because probable cause is a practical, nontechnical concept based on probabilities and common sense, see Illinois v. Gates , 462 U.S. 213, 231 (1983), this court applies a totality of the circumstances test in determining whether an officer had probable cause to make a warrantless arrest. See United States v. McCraw, 920 F.2d 224, 227 (4th Cir. 1990). In making this determination, however, this court may only

3

consider the facts and circumstances known at the time of the arrest. Id.

We find that the district court properly denied Avery's suppression motion because the agents searched Avery pursuant to a lawful arrest. Prior to Avery's arrest, a Task Force agent had received an anonymous tip that three individuals were selling drugs from a blue Camaro. The following week a confidential informant who had provided reliable information in the past corroborated the anonymous tip and provided a description of Avery as one of the persons. Agents then heard the CI approach the blue Camaro, travel with two men to a different location to buy cocaine, and then return the men to the area of the blue Camaro. They then witnessed the Camaro drive away. Immediately after the controlled buy, the CI again provided a description of Avery as the person who sold her cocaine and told the agents that Avery and the other man in the Camaro possessed additional cocaine. Approximately thirty-five minutes later the agents spotted the blue Camaro in the vicinity of where the earlier controlled buy transpired. We find that under these circumstances, the agents had reasonable suspicion to stop the Camaro and probable cause to arrest Avery. See United States v. Williams, 10 F.3d 1070, 1076 (4th Cir. 1993) (noting that a police officer is not required to know a suspect's name or to have a particularized description of his person in order to have probable cause to arrest the suspect). Because the agents had probable cause to arrest Avery, the agents lawfully searched Avery incident to that arrest. The fact that the search occurred immediately prior to the agent telling Avery that he was under arrest does not affect the legality of the search. See United States v. Miller, 925 F.2d 695, 698-99 (4th Cir. 1991). Accordingly, the district court properly denied Avery's motion to suppress evidence found on his person at the time of his arrest.

Avery next claims that the district court erred in determining the amount of cocaine attributed to him for sentencing purposes. The government has the burden of proving by a preponderance of the evidence sentencing factors, including the quantity of drugs for which a defendant should be held accountable. See United States v. Estrada, 42 F.3d 228, 231 (4th Cir. 1994). In proving these factors, the government may rely upon information found in a defendant's presentence report unless the defendant affirmatively shows that such information

4

is inaccurate or unreliable. See United States v. Gilliam, 987 F.2d 1009, 1014 (4th Cir. 1993). The district court may rely on hearsay evidence and can use large sums of money seized from a defendant to determine drug quantities at sentencing. See United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992). We review the district court's findings on sentencing factors for clear error. United States v. McDonald, 61 F.3d 248, 255 (4th Cir. 1995).

Avery's presentence report and testimony from his suppression hearing show that Avery gave Brooks the 23.5 grams of cocaine that she turned over to the police. In addition, the presentence report determined that because Avery was not working and had no other means of support at the time of his arrest, the money seized from Avery was proceeds from illegal drug transactions. Pursuant to United States Sentencing Guidelines Manual ("U.S.S.G.")§ 1B1.3 (1996) (relevant conduct), the district court thus calculated the money to be proceeds from the sale of 23.5 grams of cocaine and attributed that amount of cocaine to Avery. At sentencing, the district court expressly discredited Avery's testimony that the 23.5 grams of cocaine obtained from Brooks was not his, and that the money seized at the time of his arrest was not obtained from drug sales. The district court also found incredible the testimony of Donnetta Kyle that the cocaine hidden in Brooks' freezer did not belong to Avery. On this record, we can not say that the district court clearly erred in holding Avery accountable for 51.85 grams of cocaine. We further find that the district court made adequate factual findings at sentencing in response to Avery's objections.

Avery's final argument is that the district court erred in denying him a three-level reduction in his base offense level for acceptance of responsibility. See U.S.S.G. § 3E1.1. At sentencing Avery denied responsibility for his drug dealing activities. Finding Avery's testimony dishonest, the district court then denied Avery an acceptance of responsibility adjustment. Considering that Avery denied responsibility for the instant offense and that the district court found that his testimony lacked candor, we find that the district court properly denied a downward adjustment for acceptance of responsibility. See Uwaeme, 975 F.2d at 1018 (noting that this court must give substantial deference to a district court's credibility determinations).

5

We therefore affirm Avery's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6