**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leonardo CHAVEZ,
Defendant–Appellant.**

No. 88–5217.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1990.

Decided May 4, 1990.

As Amended May 9, 1990.

**5.** See note 3, *supra.*

John A. Keats, Alexandria, Va., for defendant-appellant.

Andrew Joseph Kameros, Sp. Asst. U.S. Atty., Alexandria, Va., for plaintiff-appellee.

Richard Brownell, Alexandria, Va., on the brief, for defendant-appellant.

Henry E. Hudson, U.S. Atty., Andrew Bennett, Sp. Asst. U.S. Atty., Alexandria, Va., on the brief, for plaintiff-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

JOSEPH H. YOUNG, Senior District Judge:

Leonardo Chavez appeals his conviction and resulting sentence for possession and interstate distribution of cocaine, contending that the evidence derived from a search warrant should have been suppressed at his trial and that an FBI agent's intrusion into his attorney-client relationship constituted a denial of effective assistance of

counsel and due process. For the reasons stated below, we reject these contentions and affirm the conviction and sentence.

I

On June 20, 1988, FBI Special Agent Stephen Benjamin received information from a confidential informant that Chavez would be traveling to Washington, D.C., that evening with a quantity of cocaine to be delivered to Mansur Ahmed. The informant, who had provided corroborated and reliable information for the FBI over the past four months, gave a description of Chavez (but not Ahmed) and stated that he would be traveling on a flight from Denver. After receiving this information, Agent Benjamin called the Denver FBI office, whose agents stated that they were familiar with Chavez, who lived in Las Vegas. The Denver office then contacted the Las Vegas FBI office, which confirmed that Chavez was on a flight from Denver to Dulles Airport.

Agent Benjamin related all this information, including the reliability of the FBI's informant, to Loudoun County Sheriff W.P. Colavita, who then obtained a search warrant for Chavez and his luggage from a Loudoun County magistrate. In his Affidavit in Support of a Search Warrant, Sheriff Colavita stated that Chavez, described as an Hispanic male, 5′10″ and 220 lbs., was due to arrive at Dulles with four kilograms of cocaine. Colavita averred that this information was based on facts relayed to him by Agent Benjamin, who based his information on the reliable but unnamed informant. The affidavit also explained that Benjamin's information was partially corroborated by other FBI offices and that the search was part of a case involving Ahmed, which was part of a "current ongoing investigation, and that there are many more people to be arrested."

After obtaining the search warrant, Benjamin and other local and federal law enforcement personnel went to Dulles Airport, where they saw an individual matching Chavez's description disembarking from a flight from Denver in the early morning of June 21, 1988. While Chavez made a phone call and proceeded to the luggage area, where he met with Ahmed and another individual, a trained narcotics dog sniffed every piece of luggage from the Denver flight and "alerted" the officers to a large, tan/brown suitcase. Just as Chavez was leaving the airport, Agent Benjamin accosted him and presented the search warrant. After the officer who controlled the narcotics dog stated that Chavez's suitcase was the one the dog sniffed, Benjamin searched the suitcase and found 794 grams of cocaine. Chavez and his companions were then arrested. In a private conversation with Benjamin after his arrest, Chavez indicated that he was willing to cooperate with federal authorities and could provide information regarding other drug traffickers in Las Vegas.

On July 1, 1988, Agent Benjamin testified at Chavez's preliminary hearing before a magistrate in the Eastern District of Virginia. Benjamin reiterated the information set out in the affidavit but added some details not in the affidavit. Over counsel's objection, the court limited the questioning to whether Benjamin was satisfied with the informant's credibility. Four days later, on July 5, the grand jury charged Chavez and Ahmed with (1) knowing possession of more than 500 grams of cocaine and (2) interstate distribution of cocaine in violation of 21 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 1952(a). At the grand jury hearing, Benjamin again testified as to the reliability of the informant and, in response to a question by one of the grand jurors, stated that the informant's knowledge was not firsthand but came from people who knew the defendant.

On July 14, 1988, Chavez, without telling his attorney, phoned Agent Benjamin from the Alexandria Detention Center and spoke to him about his potential cooperation. Chavez told Benjamin that he had heard through his attorney that the government was not interested in having Chavez plead guilty, that he thought his attorney was trying to "milk" him, and that Chavez

wished to cooperate.[1] Agent Benjamin told Chavez that he might want to think about obtaining a different lawyer because the government was interested in his cooperation.

On August 18, eleven days before trial, Chavez sought leave to file a motion to suppress out of time,[2] arguing that the search warrant was based on information contained secondhand. Chavez explained that the delay in filing the suppression motion was due to the fact that he had just obtained a transcript of the grand jury hearing (with the agent's additional testimony). The district court denied this motion two days later. On August 23, the government filed a motion in limine under Fed.R.Crim.P. 44(c), alleging a possible conflict of interest between Chavez and his counsel.[3] Based on Chavez's assertions that he wished to keep his lawyer, the district court denied the government's motion but admonished the government regarding Agent Benjamin's *ex parte* contact with a represented defendant. On August 29, the case was tried before a jury, which convicted Chavez on both counts. Between the period of the verdict and the sentencing, Chavez asked to see Agent Benjamin while Benjamin was at the Alexandria Detention Center on other business. The two discussed Chavez's cooperation and the fact that Chavez faced indictment on drug charges in Denver.

On December 9, after the district court denied the defendant's motion requesting new counsel because of Agent Benjamin's interference, the court sentenced Chavez and this appeal followed.

## II

The defendant's principal contention on appeal is that the search warrant executed against him was invalid because it was conclusory and not based on firsthand knowledge of the defendant. The government first contends, however, that the district court, in denying the motion to suppress out of time, never ruled on the substantive suppression claim. Accordingly, the government asserts, Chavez cannot litigate the merits of the validity of the warrant on appeal. We agree with the first contention, but because the district court abused its discretion in denying the defendant's motion to file out of time, we decline to evade the merits of the suppression motion in this appeal.

### A

Chavez's motion to suppress filed out of time was denied with a one-page summary order. Although the court orally remarked on the merits of the search warrant,[4] those comments were directed more at defending the conduct of the FBI agent than on the issue of probable cause. When defense counsel attempted to obtain a ruling on the merits by inquiring whether the denial of the motion was "based on [*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ] and a good faith execution," the district court stated "[w]ell, I think I have set out what I said about it as clearly as I feel like doing." These comments and the one-page order indicate that the district court never ruled upon the issue Chavez now seeks to litigate.

### B

■ Ordinarily, when a district court denies a motion to file out of time, and thus declines to rule on the merits of the search warrant, we would refuse to entertain any challenge of it on appeal. *See United States v. Mangieri*, 694 F.2d 1270, 1283 (D.C.Cir.1982) (appellate review of district

---

1. Chavez also indicated that he was troubled by the fact that Ahmed's brother was paying his attorney's fees.

2. The district court had set a motions hearing date of August 5 and had ordered that all pretrial motions be filed by July 21, 1988.

3. Under Fed.R.Crim.P. 44(c), the court "shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation."

4. For example, the court stated that "there has[n't] been a sufficient showing that there was any false representation made by the agent who obtained this warrant before the magistrate."

court's rejection of untimely motion "is limited"). *Compare also United States v. Ulloa*, 882 F.2d 41, 43 (2d Cir.1989) (failure to make timely motion constitutes waiver of that right even where trial court considers the merits), and *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir.1988) (issues raised in untimely motion to suppress are waived on appeal "even though the district court rules on the merits"), *with United States v. Vasquez*, 858 F.2d 1387, 1389 (9th Cir.1988) (when "district court considers and resolves an untimely suppression motion on its merits, we may review that decision on appeal"), *cert. denied*, —— U.S. ——, 109 S.Ct. 847, 102 L.Ed.2d 978 (1989), and *United States v. Contreras*, 667 F.2d 976, 978 n. 2 (11th Cir.) (merits of suppression motion properly before court of appeals because district court entertained and ruled on merits), *cert. denied*, 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982). However, we may reach the merits of the suppression issue if the district court committed clear error in denying the defendant's request to file out of time. *See, e.g., United States v. Jones*, 619 F.2d 494, 497 (5th Cir.1980) (district court abused its discretion in denying motion to suppress because "[g]overnment was not prejudiced by any delay").

Under Rule 12 of the Federal Rules of Criminal Procedure, motions to suppress must be raised prior to trial or by the court-appointed deadline. *See* Fed.R. Crim.P. 12(b)(3), 12(c). Under Rule 12(f), the failure of the defendant to raise a motion to suppress prior to the time set by the court "shall constitute waiver thereof, but the court *for cause shown* may grant relief from the waiver" (emphasis added).[5] We have previously declared that a motion under Rule 12(f) "is addressed to the discretion of the district judge and is to be disturbed only for clear error." *United States v. Wertz*, 625 F.2d 1128, 1132 (4th Cir.), *cert. denied*, 449 U.S. 904, 101 S.Ct.

278, 66 L.Ed.2d 136 (1980); *see also United States v. Leal*, 831 F.2d 7, 10 (1st Cir.1987) (denial of relief under Rule 12(f) may be disturbed only for abuse of discretion). Accordingly, reviewing courts rarely grant relief from denials of untimely suppression motions. *See generally* 1 C. Wright, *Federal Practice & Procedure: Criminal* 2d § 193, at 698 n. 24 (2d ed. 1982) (gathering cases). In the cases that have denied relief from these tardy suppression motions, however, the defendant either moved to suppress after the trial had commenced, on the morning of the trial, or, when filing after the court-imposed deadline, because of a dubious excuse. *See, e.g., United States v. Milian–Rodriguez*, 828 F.2d 679, 683 (11th Cir.1987) (district court did not abuse discretion when defendant did not move to suppress until 49 days after the motions filing deadline), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988); *United States v. Taylor*, 792 F.2d 1019, 1025 (11th Cir.1986) (attempt to suppress three days into trial rejected because defendant counsel had three weeks to examine potentially excludable material), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1957, 95 L.Ed.2d 530 (1987); *United States v. Grandmont*, 680 F.2d 867, 872 (1st Cir. 1982) (attempt to suppress on morning of trial rejected because defense counsel had copy of warrant and list of items to be admitted 90 days before trial); *United States v. Badwan*, 624 F.2d 1228, 1232 (4th Cir.1980) (district court did not abuse its discretion in denying motion on morning of trial because counsel had all the necessary information and had nine days to file before the motions deadline), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981).

Here, Chavez moved for a suppression hearing eleven days before trial. More importantly, counsel's tardiness was due not to negligence, oversight, or laziness but rather to the fact that the government did

---

**5.** The Advisory Committee Note to the 1975 amendment of Rule 12(f) states:

> [T]he old rule [was] unclear whether the waiver results only from a failure to raise the issue prior to trial or from the failure to do so at the time fixed by the judge for a hearing.

> The amendment makes clear that the defendant ... [has] an obligation to raise the issue at the motion date set by the judge....

(*Quoted in* 1 C. Wright, *Federal Practice & Procedure: Criminal* 2d § 193, at 697 n. 22 (2d ed. 1982)).

not turn over the grand jury transcript, which contained the basis of the informant's knowledge, until one day before the filing. Indeed, the district court had rebuffed defendant's earlier attempt to inquire into the informant's basis of knowledge at the preliminary hearing. Finally, the government would have suffered no prejudice had the court granted the defendant a suppression hearing before trial, especially since the government prepared a lengthy response to Chavez's motion and argued the merits of the suppression issue before the district court. We are not unmindful of the pressures of pretrial activity, or of the importance of court-imposed deadlines, but when counsel requests a suppression hearing almost two weeks prior to trial and the day after receiving the grand jury transcript, which revealed a concern that the defendant had unsuccessfully inquired into at the preliminary hearing, we conclude that a denial of this request constitutes a clear abuse of discretion.

### C

■ Turning to the merits of the defendant's argument on the suppression motion, we conclude that the attack on the warrant must fail. The defendant's main contention is that the Affidavit in Support of a Search Warrant was "bare bones" and cannot support the magistrate's finding of probable cause.[6] In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court adopted the "totality of the circumstances" test for determining whether a warrant is supported by probable cause. Among the factors to consider, the *Gates* Court concluded, were an informant's veracity, reliability, and basis of knowledge. The *Gates* Court further stated that "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... concluding' that probable cause existed." *Id.* at 219, 103 S.Ct. at 2322.

We conclude that the magistrate had more than a "substantial basis." Not only did the affidavit contain the information from the informant about the defendant's destination and place of delivery, but this information was independently corroborated and such details as the flight number, arrival time, and amount of cocaine were provided. In *Gates*, the Court concluded that a detailed tip in an anonymous letter that was corroborated to a large degree by police investigation and observation provided probable cause to issue an arrest warrant for two suspected drug traffickers. 462 U.S. at 241–42, 103 S.Ct. at 2333–34. Similarly, in *United States v. Porter*, 738 F.2d 622, 626 (4th Cir.) (en banc), *cert. denied*, 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984), we held that corroborated information supplied by an anonymous, untested informant provided probable cause to stop a deplaning passenger and search her luggage. Here, as in *Gates, Porter*, and *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), "with every other bit of [the informant's] information being thus personally verified," the agents had probable cause and reasonable grounds "to believe that the remaining unverified bit of ... information—that [Chavez] would have the [cocaine] with him—was likewise true." *Draper*, 358 U.S. at 313, 79 S.Ct. at 333.

Indeed, one of the cases cited by defendant, *United States v. Jackson*, 818 F.2d 345 (5th Cir.1987), supports the government. There, the court stated that the reliability of an informant may be established by showing that "the informant has previously given tips that have proved to be correct," or that the information given has been corroborated. 818 F.2d at 348. Both these factors are present in this case. The problem with the informant in *Jackson* was not his vague descriptions but the fact that he "was an admitted perpetrator of the crime" and "had reason to shade any

---

**6.** The defendant's assertion that the trial court "conceded" the above "bare bones" argument by referring to the good faith exception in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is incorrect. Although the district court stated that "the warrant comes under *Leon*, and was a warrant that was issued and executed in good faith," the court never suggested that the warrant lacked probable cause or that Agent Benjamin acted untruthfully or withheld information from the magistrate.

information he gave in order to exculpate himself or to curry favor with officials." *Id.* That cannot be said about the informant here. Rather, the corroborated information contained in the affidavit demonstrated that there was a "fair probability" that contraband would be found either on Chavez's person or in his luggage upon arrival at Dulles Airport. *See Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.[7]

■ Similarly unavailing is the defendant's argument that even if the warrant was facially valid, it should be voided under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), because Agent Benjamin "willfully misled" the magistrate into believing that the informant's basis of knowledge was firsthand. The record does not support this assertion. Despite the nature of the informant's knowledge, there is no evidence that Agent Benjamin doubted his credibility, and *Franks* requires only that the government affiant reasonably believe the allegations to be true. *See* 438 U.S. at 165, 98 S.Ct. at 2681. *Cf. United States v. Giacalone,* 853 F.2d 470, 476 (6th Cir.) (to justify *Franks* hearing defendants must make substantial preliminary showing that false statements originated with government affiant, not with informants), *cert. denied,* —— U.S. ——, 109 S.Ct. 263, 102 L.Ed.2d 251 (1988). Thus, "there is [no] basis for concluding that the officers' conduct in preparing the affidavit was dishonest and reckless." *United States v. Edwards,* 798 F.2d 686, 690 (4th Cir.1986).

The defendant maintains, however, that an "experienced law enforcement officer would know" that such information "would raise questions with the magistrate." This is far from clear. Although the basis of an informant's knowledge may be relevant in some circumstances, the *Gates* Court found it irrelevant whether the informant's information came from the defendant or from "someone they trusted." 462 U.S. at 246,

103 S.Ct. at 2336. Further, the Supreme Court repeatedly has held that a finding of probable cause may be based on hearsay, *see, e.g., United States v. Ventresca,* 380 U.S. 102, 103, 85 S.Ct. 741, 743, 13 L.Ed.2d 684 (1965), and this view is now codified at Fed.R.Crim.P. 41(c)(1). Since Agent Benjamin was under no obligation to inform the magistrate of the informant's secondhand knowledge, and never intentionally concealed that fact, we conclude that the evidence obtained from the search was properly admitted at trial.

## III

■ Chavez next argues that Agent Benjamin's *ex parte* communication with him both before and after trial (1) abridged his right to effective assistance of counsel and (2) denied him the benefits of a departure under the Sentencing Guidelines. Although the *ex parte* contacts give us pause, they do not rise to the level of a Sixth Amendment violation.

### A

The factual focus of appellant's argument is a telephone conversation (initiated by Chavez) between Agent Benjamin and the then-incarcerated defendant. Although the defendant asserts that Benjamin planted the seeds of distrust between the defendant and his lawyer, the transcript of this recorded conversation reveals that Chavez already was concerned about his lawyer and, in fact, called Benjamin to express this concern. However, the transcript also shows that Benjamin, while solicitous of Chavez's right to counsel,[8] suggested ways for this already-represented defendant to obtain a new lawyer. After Benjamin informed Chavez that the government was interested in cooperating, Benjamin told Chavez that to begin cooperating, he would

---

7. Of course, even if the search warrant was insufficient to establish probable cause, it is clear that Agent Benjamin had probable cause to search Chavez's luggage after the drug "detector dog" alerted to the defendant's luggage. *See Florida v. Royer,* 460 U.S. 491, 505–06, 103 S.Ct. 1319, 1328–29, 75 L.Ed.2d 229 (1983).

8. At one point, Agent Benjamin stated: "I, I, we can't, you and I can't sit down and talk since you're represented by counsel."

either need to, you either need to let this attorney know that you want to talk to the FBI and/or the prosecutor. And if you don't trust your attorney, then you need to let the court know ah, you know. And the, the best way of doing that is for you to write, write a small letter, doesn't have to be anything fancy, just ah, ah, a paragraph, ah stating that you wish to ah, you know, change attorneys. And explain, you know explain the problem that you're having. It's, it, if you don't feel like your being represented as, as to your wishes, then you need to explain that.

After further discussion regarding a plea agreement, Chavez stated that he "didn't want to change attorneys and create, you know, suspicion." Despite this clear disinclination to change counsel, Benjamin again discussed the procedures for changing lawyers, stating that once Chavez pled guilty and agreed to cooperate, he would "need an attorney looking out for your interests, you know, and not [codefendant] A[h]med's interests."

In addition to this extended communication, the record also discloses that, after the guilty verdict, Agent Benjamin spoke with Chavez on September 9, 1988, on September 21, on October 28, and again on November 10. These conversations were all initiated by Chavez, although Benjamin did appear at the Alexandria Detention Center on September 9 where Chavez was being held.

We are disturbed by the extent of the communication between Agent Benjamin and the defendant. Both government lawyers and government agents must be aware and respectful of the ethical guideline that forbids *ex parte* contacts with a represented defendant.[9] *See* Model Rules of Professional Conduct Rule 4.2 (1987) ("a lawyer shall not communicate ... with a party the lawyer knows to be represented by another lawyer ... unless the lawyer

has the consent of the other lawyer or is authorized by law to do so"). Indeed, a critical component of the Sixth Amendment's guarantee of effective assistance is the ability of counsel to maintain uninhibited communication with his client and to build a "relationship characterized by trust and confidence." *Morris v. Slappy*, 461 U.S. 1, 21, 103 S.Ct. 1610, 1621, 75 L.Ed.2d 610 (1983) (Brennan, J., concurring); *see also Ferri v. Ackerman*, 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979). Although the contact here was initiated by the defendant Chavez, the refusal of the government agent to terminate these conversations contributed to a further weakening of the attorney-client relationship and "tilted the delicate balance of [the adversarial] process." *In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 259 (2d Cir.1985) (Feinberg, C.J., dissenting), *cert. denied*, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986). Accordingly, we admonish the United States Attorney's Office, and all federal investigative agencies, to avoid this type of intrusion into the attorney-client relationship in the future. *Cf. United States v. Pelaes*, 790 F.2d 254, 258 (2d Cir.) ("we caution the government that it is the responsibility of the United States Government, not just of the United States Attorneys, to see that the [Sixth Amendment] rights of a defendant are not infringed"), *cert. denied*, 479 U.S. 842, 107 S.Ct. 151, 93 L.Ed.2d 92 (1986).

■ "Not all government interference with the attorney-client relationship," however, "renders counsel's assistance so ineffective as to violate a defendant's sixth amendment right to counsel." *Hall v. State of Iowa*, 705 F.2d 283, 290 (8th Cir.), *cert. denied*, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983); *see also United States v. Irwin*, 612 F.2d 1182, 1185 (9th Cir.1980). Rather, it is well settled that some showing of prejudice is a necessary element of a Sixth Amendment claim based on an invasion of the attorney-client relationship. *See, e.g., Weatherford v. Bursey*, 429 U.S.

---

**9.** It is the policy of the Department of Justice, however, to allow federal agents and assistant United States attorneys to contact or communicate with represented defendants when these defendants initiate such communication. *See* Letter from Henry E. Hudson, United States

Attorney for the Eastern District of Virginia, to Hon. T.S. Ellis, III, United States District Judge for the Eastern District of Virginia (Nov. 29, 1988). Although the merits of this policy are not before us, we note that it is inconsistent with our decision today.

545, 558, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977); *United States v. Kelly,* 790 F.2d 130, 136 (D.C.Cir.1986); *Clutchette v. Rushen,* 770 F.2d 1469, 1471 (9th Cir.1985), *cert. denied,* 475 U.S. 1088, 106 S.Ct. 1474, 89 L.Ed.2d 729 (1986). This defendant cannot demonstrate any prejudice resulting from the Chavez–Benjamin conversations. First, the interviews with Chavez were undertaken not to obtain incriminatory statements but to explore the possibility of cooperation. *Cf. Weatherford,* 429 U.S. at 557, 97 S.Ct. at 844 (government did not intend to uncover evidence or learn about defense strategy). More importantly, the government used no information elicited from Chavez against him at trial or in sentencing, and the government's repeated contacts uncovered no confidential information regarding defense counsel strategy or witness plans. *See Weatherford,* 429 U.S. at 554, 97 S.Ct. at 843 (had any of state's evidence "originated in these conversations," defendant "would have a much stronger case"); *United States v. Glover,* 596 F.2d 857, 864 (9th Cir.) ("had the interviewing agents obtained any evidence that could have been used against [the defendant], this would be a different case"), *cert. denied,* 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979). Finally, the defendant himself, at the Rule 44 hearing on potential conflict of interest,[10] reaffirmed his loyalty to counsel, thereby indicating that the "trust" component of the attorney-client relationship remained largely undamaged. Thus, the agent's conduct, however troublesome, did not rise to a constitutionally impermissible invasion into the attorney-client relationship.

### B

The defendant's final argument, that Agent Benjamin's "meddling" denied him an opportunity to negotiate a departure under the Sentencing Guidelines, is without merit. A downward departure in sentence based on "substantial assistance to authorities" can be made only upon motion by the government, *see* United States Sentencing Commission, *Guidelines Manual* § 5K1.1 (Nov. 1989), and it is clear that the defendant has no right to this depar-

10. *See* note 3, *supra,* and accompanying text.

ture or even a right to bargain for such a departure. Rather, the defendant is credited with the substantial assistance reduction only *after* he has rendered the assistance and after this assistance has been evaluated by the government. *See United States v. Francois,* 889 F.2d 1341, 1343 (4th Cir. 1989); *United States v. Musser,* 856 F.2d 1484, 1487 (11th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989). Here, the defendant has not shown what he could have provided the government by way of "substantial assistance," so it is mere speculation to state that Chavez would have received the substantial assistance reduction.

### IV

Because the government agents had probable cause to search the defendant's luggage, and because Agent Benjamin did not unconstitutionally invade the attorney-client relationship, the conviction and resulting sentence is

AFFIRMED.