972 F.2d 343
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Ian Andrew OSBOURNE, Defendant-Appellant.
 No. 91-5453.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 8, 1992
Decided: August 17, 1992
 
 ARGUED: Robert Charles Bonsib, MARCUS & BONSIB, Greenbelt, Maryland, for Appellant. John Francis Purcell, Jr., Assistant United States Attorney, Baltimore, Maryland, for Appellee. ON BRIEF: Richard D. Bennett, United States Attorney, Baltimore, Maryland, for Appellee.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 ERVIN, Chief Judge:
 
 OPINION
 
 1
 Ian Andrew Osbourne was convicted of conspiracy to possess with the intent to distribute cocaine following a search and seizure at an apartment. Osbourne contests the search because, he contends, the affidavit upon which the magistrate judge issued the warrant was insufficiently reliable. In addition, Osbourne argues that he was entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), because the government recklessly included misleading information in the affidavit. Finally, Osbourne contends that evidence presented at trial concerning his drug dealings before the charged conspiracy began should have been excluded. We affirm.
 
 I.
 
 2
 At approximately 6:00 a.m. on February 5, 1991, Drug Enforcement Administration agents executed a search warrant at 1523 Ray Road, Apartment 302, Hyattsville, Maryland. Agent Douglas Kahn, who participated in the search, had written the affidavit used to secure the warrant. After the agents spent a period of time attempting to break down the front door, Osbourne opened it. The agents found Osbourne fully dressed, except for his shoes, and wearing a beeper. The agents found another person, Leon Roy Adamson, in the bathroom sitting on the commode. The agents noticed that the toilet was flooding and found three baggies containing what proved to be 728 grams of cocaine blocking the toilet. The agents also found a fully loaded nine millimeter semi-automatic handgun between the commode and the bathroom wall. In the rest of the apartment the agents found drug debt records, drug paraphernalia, two driver's licenses for Adamson, and a speeding ticket issued to Osbourne.
 
 
 3
 Osbourne was charged with conspiring from January 1, 1991 until the search on February 5, 1991 to possess with the intent to distribute cocaine, in violation of 21 U.S.C. § 846, and with possession with the intent to distribute cocaine, in violation of 21 U.S.C. 841(a)(1). Osbourne pled not guilty; Adamson, who was also charged, pled guilty before trial. The district court held a pre-trial hearing on Osbourne's motion to suppress evidence on May 31, 1991. Osbourne's contention at that hearing was that the court should have dismissed all evidence against him because the affidavit upon which the magistrate judge approved the February 5 search warrant did not bear sufficient indicia of reliability. The court denied Osbourne's motion orally at the conclusion of the hearing and issued a written memorandum and order to that effect on September 4, 1991.
 
 
 4
 Trial by jury commenced on September 5, 1991. The government's main witness was Treva Cameron, who was 18 years old at the time of trial. Cameron was also one of the confidential informants who had provided the basis for the search warrant. At trial, Cameron described his involvement with Adamson, Osbourne, and others in a cocaine distribution scheme. Cameron was in prison during the dates of the charged conspiracy, so his testimony concerned events that predated the crime. Cameron described his May 1990 arrest by Agent Kahn at National Airport, which occurred when he returned from Miami with cocaine he was delivering to Adamson at 1523 Ray Road. Cameron testified that he had been working for Adamson in the cocaine distribution business since 1987, and testified about trips he and Osbourne took with Adamson to procure cocaine, first to New York and more recently to Miami. Cameron stated that for six months prior to his arrest, he and Osbourne had been staying with Adamson at 1523 Ray Road for five or six nights a week, and that Adamson provided both men with beepers for use in the drug business. Cameron testified that Osbourne had been present for and participated in the weighing and packing of cocaine and that Osbourne sometimes distributed the cocaine to Washington, D.C. customers. Cameron stated that the gun seized at the apartment was Adamson's. Cameron also said that his last contact with Adamson was in December 1990 and that he, Cameron, had pled guilty to state charges stemming from his May 1990 arrest and was incarcerated beginning in January 1991.
 
 
 5
 Special Agent Terry Dunn also testified at trial. Dunn described Osbourne's statement made after his February 5, 1991 arrest and waiver of Miranda rights. Dunn stated that Osbourne said that he had known Adamson for some time and that he had travelled with him to Florida on several occasions, most recently on the previous weekend. Osbourne stated that he and Adamson would sleep in Adamson's car and a few days later return to Maryland. Osbourne said that Adamson met with some men during the last trip but that he, Osbourne, did not know the purpose of either that meeting or any of the other trips to Florida.
 
 
 6
 Testifying at trial, Osbourne denied making any trip to Florida except one, and stated that he saw Adamson meeting with someone but that he did not know the purpose of the meeting. Osbourne denied being involved in or knowing that Adamson was involved in cocaine dealing, and contended that he did not see the drugs, paraphernalia, or gun in the apartment. Osbourne testified that he had fallen asleep while watching television the previous night wearing the beeper that Adamson had given him, but that the beeper was not related to drug trafficking.
 
 
 7
 The jury convicted Osbourne of conspiracy to possess with the intent to distribute cocaine, but it acquitted him of possession with the intent to distribute. Pursuant to the Sentencing Guidelines, the court sentenced Osbourne to 63 months in prison. Osbourne timely appealed his conviction.
 
 II.
 
 8
 Osbourne contends that the district court erred in not determining that the affidavit upon which the magistrate judge issued the search warrant lacked sufficient indicia of reliability to provide a reasonable basis for probable cause to search. In an affidavit sworn before a magistrate judge, Kahn averred the following facts that led him to believe that Adamson was using the searched premises as an organizational headquarters of his crack cocaine distribution ring:
 
 
 9
 4. On May 22, 1990, your affiant along with TFA Terry Forshey arrested Treva Donald Cameron at Washington National Airport. Cameron was in possession of one hundred and forty-three (143) grams of powder cocaine. Your affiant has learned from a source of information, here in referred to as CS-1, that the cocaine Cameron was carrying on his person at the time of his arrest belonged to Adamson, and that this cocaine was to be distributed by Adamson's crack cocaine organization. Your affiant has since learned that on the day of Camerons arrest he was to be picked up by Adamson, in a blue Yugo.
 
 
 10
 5. Over the past few months the affiant has had several conversations with CS-1 and CS-2 with reference to the narcotic organization of Adamson. CS-1 and CS-2 have provided numerous pieces of information about this organization. All of the information received from these sources has been verified independently when ever possible and never found to be false or misleading.
 
 
 11
 6. CS-1 and CS-2 both indicate that Adamson is currently using 1523 Ray Road Hyattsville, Maryland apartment number 302 as a stash house in this illegal narcotics organization. Further that Adamson uses this location for the purpose of processing this cocaine into crack cocaine for street distribution. Observations conducted at 1523 Ray Road, Hyattsville, Maryland reveal that a Blue Yugo bearing Washington, D.C. tag 448-531 is listed to Leon Roy Adamson, and this vehicle has been observed on several occasions at this location in Hyattsville. Both CS-1 and CS2 provided information about several other vehicles used by Adamson. These vehicles have also been observed parked in front of 1523 Ray Road Hyattsville, Maryland.
 
 
 12
 CS-1 and CS-2 both have indicated that Adamson has been involved in the distribution of narcotics for several years, and that he has been arrested in the past. A record check was conducted with the Metropolitan Police Department [which confirmed this fact]....
 
 
 13
 8. During the week of January 28, 1991 CS-1 stated that Adamson had departed to Florida for the purpose of obtaining a large quantity of cocaine to be carried back to 1523 Ray Road, apartment 302, Hyattsville, Maryland where Adamson would convert this cocaine powder into crack cocaine. Further CS-1 stated that Adamson would be traveling to Florida in a Silver Jeep Cherokee having dark windows and bearing New York Registration, unknown. On February 1, 1991 the previously described Jeep was observed parked in front of 1523 Ray Road, Hyattsville, Maryland.
 
 
 14
 9. On February 4, 1991, CS-2 contacted the affiant and stated that Adamson currently had arrived from a unknown location with a large quantity of narcotics. CS-2 further indicated that these narcotics are located inside apartment number 302, at 1523 Ray Road, Hyattsville, Maryland.
 
 
 15
 J.A. 201-02.
 
 
 16
 This court and the court below make the same inquiry in reviewing the magistrate judge's approval of the warrant based on the affidavit. We must ask only whether the magistrate judge had a" 'substantial basis' " for concluding that probable cause existed. United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). In doing so, we must give " 'great deference' to the magistrate's assessment of the facts presented to him." Id. (quoting Spinelli v. United States, 393 U.S. 410 (1969)).
 
 
 17
 The district court, in a well-reasoned decision, undertook a thorough review of the affidavit and the applicable legal principles. See J.A. 20-28. It found that those statements of the confidential informants that Agent Kahn was able to corroborate did not provide any basis for suspecting Adamson for the crimes alleged. However, the court held that the interlocking nature of the tips provided by CS-1 and CS-2 provided sufficient indicia of reliability for the affidavit viewed as a whole to pass constitutional muster. See United States v. Landis, 726 F.2d 540, 543 (9th Cir.) ("Interlocking tips from different confidential informants enhance the credibility of each."), cert. denied, 467 U.S. 1230 (1984). In the alternative, the court ruled that even if the affidavit did not provide a substantial basis for concluding there was probable cause, Agent Kahn in objective good faith relied on the magistrate judge's determination. See United States v. Leon, 468 U.S. 897, 923 (1984). We hereby adopt the reasoning and conclusions of the district court and affirm its denial of Osbourne's motion to suppress.
 
 III.
 
 18
 Osbourne learned at trial that Cameron was CS-1, the unnamed informant in the affidavit. In section number eight of the affidavit, Kahn stated that "During the week of January 28, 1991 CS-1 stated that Adamson had departed to Florida for the purpose of obtaining a large quantity of cocaine to be carried back to[the searched apartment] where Adamson would convert this cocaine powder into crack cocaine." In addition, in section number six, CS-1 (and CS-2) indicated that Adamson was currently using the apartment as a stash house for cocaine. Osbourne argues that Kahn implied in both sections that Cameron knew this information firsthand, but since he was in jail at this time he could not have. Osbourne calls these statements misleading and contends that they raised a substantial question as to the government's good faith in preparing the affidavit. Therefore, as he requested at trial, Osbourne contends that he was entitled to a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).
 
 
 19
 We stated in United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990), that a defendant requesting a Franks hearing must make a "dual showing ... which incorporates both a subjective and an objective threshold component." First, the defendant"must make 'a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.' " Id. (quoting Franks, 438 U.S. at 155-56). Secondly, the offending information must be essential to the probable cause determination; if the offending information is excluded and probable cause still remains, no Franks hearing is required. Id.
 
 
 20
 The district court's refusal to hold a Franks hearing in this case must be affirmed on the basis of our decision in United States v. Chavez, 902 F.2d 259 (4th Cir. 1990). In Chavez, the defendant argued that the affiant willfully misled the magistrate judge into believing that the informant's basis of knowledge was firsthand. We held that while the affidavit might have been unclear, the record did not demonstrate that the agent affirmatively tried to mislead the magistrate judge in this way. Id. at 265. The same is true here. We also held that it was immaterial whether the information was based on first or secondhand information. Id. All that is necessary is that the agent reasonably believe that the informant's allegations are true, since it is beyond dispute that a finding of probable cause may be based on hearsay. See United States v. Ventresca, 380 U.S. 102, 103 (1965); Fed. R. Crim. Proc. 41(c)(1). In Chavez, we concluded in language equally applicable to this case: "Since [the agent] was under no obligation to inform the magistrate of the informant's secondhand knowledge, and never intentionally concealed that fact, we conclude that the evidence obtained from the search was properly admitted at trial." Id.
 
 IV.
 
 21
 Finally, Osbourne challenges the admissibility under Federal Rule of Evidence 404(b) of Cameron's testimony about drug dealings with Osbourne and Adamson prior to the charged conspiracy as well as the gun found in the apartment. We find testimony regarding the gun to be direct evidence of the drug trafficking conspiracy, and thus admissible without regard to Rule 404(b). See United States v. Collazo, 732 F.2d 1200, 1206 (4th Cir. 1984), cert. denied, 469 U.S. 1105 (1985). Cameron's testimony regarding the prior drug dealings, on the other hand, is evidence to which Rule 404(b) is applicable.
 
 
 22
 Evidence of prior bad acts, when used to establish a propensity for criminal activity, is generally inadmissible under Rule 404(b). At the time of trial, that rule provided:
 
 
 23
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 24
 In determining whether evidence is admissible under this rule, the district court must balance its probative value-defined as its relevance to an issue other than character, necessity, and reliability-against the prejudice to the defendant of admitting the evidence. United States v. Hadaway, 681 F.2d 214, 217 (4th Cir. 1982). A district court has broad discretion to admit evidence under any exception to Rule 404(b), and we will overturn its decision only for an abuse of discretion. United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991).
 
 
 25
 The government must first show relevance to one of the Rule 404(b) exceptions. Osbourne pled not guilty to the charged offense. His defense was primarily that, although he associated with Adamson, mere association is not enough to support a conviction. In a case squarely on point, we recently held that pleading not guilty to a charge of conspiracy to distribute a controlled substance puts essential elements of the crime charged, the defendant's intent and knowledge, at issue. See United States v. Mark, 943 F.2d 444 (4th Cir. 1991). As we stated in Mark:
 
 
 26
 [T]he government is correct in arguing that the extrinsic act evidence offered did not address a purely collateral matter but rather supported the government's central theory that [defendant] was not an innocent friend of his co-defendants but rather was a major cocaine distributor responsible for the transaction at issue.
 
 
 27
 Id. at 448. Extrinsic bad acts evidence such as that offered in the case at bar is therefore relevant to an issue other than character; thus the government offers it for a proper purpose. See also United States v. King, 768 F.2d 586, 588 (4th Cir. 1985) (evidence of prior cocaine distribution convictions admissible because it shows drug distribution knowledge, which "makes it more likely that [he] intended to distribute drugs and was not an innocent friend of [co-defendant's] caught in the wrong place at the wrong time").
 
 
 28
 The government has adequately shown necessity since its case was not overwhelming without Cameron's testimony; Osbourne may have merely been, as he claims, an innocent overnight guest. In addi tion, Cameron's testimony appeared to be reliable, since it was corroborated by the drugs, firearm, and paraphernalia found in the apartment during the search, Osbourne's beeper, and Osbourne's admission that he went to Florida with Adamson.
 
 
 29
 Finally, Osbourne argues that the testimony was unfairly prejudicial. As this court stated in Hadaway, "The evidence was prejudicial in the sense that it increased the likelihood of conviction, but it did not create the impression that appellant was an ogre who should be sent to jail, guilty or not." 681 F.2d at 219. In addition, the court gave proper cautionary instructions not to consider the evidence as direct evidence of the crime charged. We found similar instructions important in dissipating any unfair prejudice that might arise from admitting similar Rule 404(b) evidence in Hadaway, 681 F.2d at 219, and United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980). Therefore, the district court did not err in admitting the Rule 404(b) evidence.
 
 V.
 
 30
 Accordingly, we must affirm Osbourne's conviction.
 
 AFFIRMED