21 F.3d 425
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Respondent-Appellant,
v.
$57,000 IN NORTH CAROLINA NATIONAL BANK ACCOUNT NUMBER
031028293, Petitioner-Appellee.
 No. 92-1817.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1994.
Decided April 18, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina. Graham C. Mullen, District Judge. (MISC-2615-MU)
 Frank DeArmon Whitney, Asst. U.S. Atty. (Thomas J. Ashcraft, U.S. Atty., on brief), Charlotte, NC, for appellant.
 James Frank Wyatt, III, Charlotte, NC, for appellee.
 W.D.N.C.
 REVERSED.
 Before WILKINSON, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The government appeals from the district court's order granting James Bouler's motion for the return of his seized property. Concluding that the district court erred in holding that the seizure of Bouler's property violated his Fourth Amendment rights, we reverse the district court's order.
 
 I.
 
 2
 On October 4, 1991, local law enforcement officers from Union County, North Carolina, intercepted one of appellee James Bouler's cordless telephone conversations. In that conversation, Bouler expressly sought and received advice on how to cash a $57,000 cashier's check without paying taxes on the money. The local officers presented a transcript[1] of this intercepted conversation to Special Agent Danna Coffey of the Internal Revenue Service (IRS) Criminal Investigation Division, who was temporarily handling an ongoing criminal investigation of Bouler while other agents were on vacation.
 
 
 3
 After reviewing Bouler's criminal file, Agent Coffey discovered that Bouler had a criminal history involving drugs and firearms, and had been implicated by Ned Johnson, a convicted drug kingpin who was cooperating with the government, as a major player in Johnson's drug and money laundering conspiracy.[2] Believing that there was probable cause that Bouler's $57,000 cashier's check was involved in an unlawful transaction, Coffey contacted the United States Attorney for the Western District of North Carolina. On October 22, 1991, and at the prompting of an Assistant United States Attorney from that office, see J.A. at 47 n. 5, Coffey prepared a sworn affidavit and an application for a warrant to seize the $57,000 check.
 
 
 4
 Coffey's affidavit set forth two separate theories of probable cause for seizing Bouler's $57,000 check as forfeitable property under 18 U.S.C. Sec. 981(a)(1)(A) (West Supp.1994).[3] First, Coffey stated that Bouler's extensive drug activity coupled with his comparatively little reported income established probable cause that the $57,000 check was involved in the laundering of drug proceeds in violation of 18 U.S.C. Secs. 1956-57 (West Supp.1994).[4] Second, Coffey asserted that probable cause existed to believe that Bouler intended to commit a "structuring" offense by evading IRS reporting requirements on the $57,000, see 31 U.S.C. 5313(a), in violation of 31 U.S.C. Sec. 5324(a)(1) & (3) (West Supp.1993).[5] Agent Coffey detailed the evidence in support of these theories of probable cause for forfeiture. As to the theory that Bouler was laundering drug proceeds, she explained that Bouler had been implicated by a cooperating convicted drug kingpin in a drug trafficking and money laundering conspiracy; that local officials had previously discovered cocaine along with $10,000 in cash at Bouler's residence; that Bouler was, as of the time she submitted the affidavit, serving a term of probation for a federal firearms conviction; and that, after reviewing Bouler's files, she believed he lacked sufficient reported income to explain his possession of the $57,000. Id. at 4-8. As to the theory that Bouler was seeking to avoid reporting the $57,000 to the IRS, Coffey related the information obtained from the intercepted cordless telephone conversation, although, out of a concern that Bouler not discover that his cordless telephone conversations were being intercepted, she did not specify in her affidavit that the government's source of this information was actually a conversation in which Bouler himself sought and obtained advice on how to avoid IRS reporting requirements. Rather, she stated that
 
 
 5
 [t]hrough a confidential source of information, investigating officers learned that Bouler intended to cash a check in the amount of $57,000. However, Bouler was told by another party that, if he [sic] a bank cashed the check for him, the bank would have to file a federal report with the IRS (i.e., "currency transaction report" a/k/a/ "CTR"). The other party suggested that Bouler deposit the check into an account, and then withdraw the sum in increments. The information obtained from the confidential source has been reviewed and corraborated [sic] by the affiant.
 
 
 6
 J.A. at 6-7. She also recited in the affidavit the fact that Bouler ultimately did deposit the check, attempting to withhold $5,000 of the deposited amount.
 
 
 7
 Agent Coffey submitted this affidavit to a federal magistrate judge on October 22, 1991. That same day, the magistrate issued a warrant for the seizure of the $57,000 on the basis of her affidavit, and agent Coffey served the warrant on the bank at which Bouler had deposited the check. The bank issued a certified check in the amount of $57,000 to the IRS regional commissioner on November 1, 1991, and the IRS, in accordance with seizure and forfeiture procedures, see 19 U.S.C. Sec. 1607 (West Supp.1994), soon thereafter mailed notice of the seizure to Bouler and subsequently published public notice of the seizure in the Mecklenburg Times.
 
 
 8
 On November 12, 1991, Bouler's attorney filed a claim and cost bond with the IRS, see 19 U.S.C. Sec. 1608 (West Supp.1994), imposing on the IRS an obligation to transmit the claim and bond to the United States Attorney for that district, id. The claim also gave rise to a concomitant obligation of the government "immediately to inquire into the facts" of Bouler's case and, should it be found probable that Bouler committed any violation warranting forfeiture, "forthwith to cause [civil forfeiture] proceedings to be commenced and prosecuted, without delay." 19 U.S.C. Sec. 1604 (West Supp.1994). The very next day, however, before the government had actually initiated any forfeiture proceeding, Bouler filed with the United States District Court for the Western District of North Carolina a motion under Fed.R.Crim.P. 41(e) for the return of his seized property.[6]
 
 
 9
 Notwithstanding the fact that no civil forfeiture action was pending before it, the district court held a hearing on Bouler's motion on November 20, 1991. The court determined that, because the seizure of Bouler's check was not supported by probable cause, his Fourth Amendment rights had been violated. On March 9, 1992, the court ordered Bouler's funds returned.[7] The court thereafter denied the government's motion for reconsideration, and this appeal followed.
 
 II.
 
 10
 The sole issue presented in this appeal is whether the district court erred in holding that the seizure of Bouler's check was not supported by probable cause and therefore violated his Fourth Amendment rights.[8]
 
 
 11
 In reaching its conclusion, the district court rejected the government's first theory of probable cause--that the funds were forfeitable drug proceeds--on the grounds that it had been abandoned at the evidentiary hearing. It then held that Agent Coffey's affidavit failed to set forth evidence establishing probable cause under the government's second theory--that Bouler's check was involved in a structuring offense. The government argues on appeal that it never abandoned either of its theories, and that Agent Coffey's affidavit established probable cause under both. We agree with the government, and reverse the district court's order returning Bouler's funds.
 
 
 12
 First, the government never abandoned its argument, which we find persuasive, that the magistrate had probable cause to believe that Bouler's $57,000 check was involved in the laundering of drug proceeds. It is true that, after the warrant was issued, the government learned that the check was not, in fact, derived from drug activity, and conceded as much to the district court at the evidentiary hearing.[9] This concession, however, did not constitute an abandonment of its probable cause argument. That the $57,000 was, in actuality, not drug revenue is irrelevant to the probable cause question before the district court and before us, which is only whether the affidavit itself provided the magistrate with a " 'substantial basis for ... conclud[ing]' that probable cause existed."[10] Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). Thus, while the government may have abandoned at the evidentiary hearing its position that the money actually was drug proceeds, see J.A. at 96, this was not an abandonment of its argument that the affidavit established probable cause of a money laundering offense.[11] We believe that Agent Coffey's affidavit did, in fact, establish probable cause that the $57,000 was involved in the laundering of drug proceeds. First, the affidavit presented evidence, provided by a cooperating convicted drug kingpin, not only that Bouler was involved in a cocaine conspiracy and that authorities had previously seized over $153,000 in cash drug funds from Bouler, but also that Bouler had himself previously laundered drug money. J.A. at 4-6; see Jones v. United States, supra, at 271 (that defendant was a known user of narcotics made charge against him of narcotics trafficking "much less subject to scepticism [sic] than would be such a charge against one without such a history"). Second, Agent Coffey recited in her affidavit that, after reviewing Bouler's tax records, she had determined that he lacked sufficient reported income to possess $57,000. This conclusion, together with Bouler's involvement in drug trafficking and money laundering, established probable cause that the $57,000 check was criminally derived and that Bouler's attempt to cash it constituted a transaction in criminally derived property. See 18 U.S.C. Sec. 1957. The district court's rejection of the government's first theory of probable cause was, therefore, error.
 
 
 13
 The district court also erred in its holding that Agent Coffey's affidavit failed to establish probable cause that the $57,000 check was involved in a structuring offense. The court reasoned that the government's confidential source of information, by which it was specifically informed that Bouler had been advised how to avoid IRS reporting requirements on the $57,000, was neither adequately verified nor corroborated by other evidence in the affidavit. We disagree.
 
 
 14
 Agent Coffey's failure to specify the basis of information for and the veracity of the government's confidential source did not render the warrant invalid because the affidavit provided substantial additional evidence corroborating that source. It is true that, in order to avoid disclosing to Bouler that the government was intercepting his cordless telephone conversations, Agent Coffey chose not to set forth in her affidavit the fact that the source of the government's information that Bouler intended to avoid reporting his $57,000 check to the IRS was a transcript of one of Bouler's own telephone conversations. Instead, she simply described the information as originating from a "confidential source." J.A. at 6. Were Agent Coffey's intentionally veiled description of Bouler's intercepted telephone conversation the sole evidence presented in her affidavit, we might agree with the district court that the magistrate's warrant was not supported by probable cause. However, this was not the "barebones" affidavit the district court found it to be, J.A. at 56, 57-58. When the government's information that Bouler wished to evade reporting requirements on the $57,000 is viewed, as it must be, in conjunction with the wealth of additional, corroborating evidence supplied in the affidavit, we find that the "totality-of-the-circumstances" reveals a " 'substantial basis for ... conclud[ing]' that probable cause existed." Gates, supra, at 238-39 (citation omitted).
 
 
 15
 First, Bouler's conduct after receiving the advice on how to avoid reporting the $57,000 corroborates the government's information. As reported in the affidavit, the government's source revealed that Bouler had originally intended to cash the check, but was subsequently advised to deposit the check and then withdraw from it in increments so as to avoid having the bank report the transaction to the IRS. J.A. at 7. The affidavit further explains that, after receiving this tip, Bouler elected not to cash the entire check, but rather deposited it, seeking to withdraw a $5,000 increment from his deposit. Although each of these actions, standing alone, might well appear entirely innocuous, when viewed in light of the government's confidential information they provide compelling corroborative evidence. See Gates, supra, at 243-44 n. 13 (observing that seemingly innocent activity often becomes corroborative when viewed in light of the initial tip) (citation omitted); United States v. McCraw, 920 F.2d 224, 228 (4th Cir.1990) (same); see also, e.g., Gates, supra, at 244 (independent police work corroborating anonymous informant's tip provided probable cause); United States v. Chavez, 902 F.2d 259, 264-65 (4th Cir.1990) (independent corroboration of unnamed informants' tip provided probable cause).
 
 
 16
 Moreover, contrary to the district court's observation, see J.A. at 58, Bouler's actions after receiving this advice were not the only corroborative evidence provided in the affidavit. In fact, Agent Coffey's affidavit spelled out in some detail the evidence, see supra, establishing a likelihood that the $57,000 constituted drug proceeds that Bouler sought to launder. This likelihood, together with Agent Coffey's professional judgment that "those involved in laundering drug proceeds frequently use cashier's checks and attempt to avoid cur rency reporting requirements," J.A. at 8, itself may well have established probable cause that Bouler sought to commit a structuring offense with the $57,000. It certainly does so when combined with the government's confidential information that Bouler had received advice on how to avoid reporting requirements and the information that Bouler had apparently followed that advice. We therefore disagree with the district court that the affidavit failed to establish probable cause that Bouler's $57,000 cashier's check was involved in a structuring offense.
 
 
 17
 Because the government never abandoned its argument that Agent Coffey's affidavit established probable cause of a money laundering transaction, and because her affidavit established probable cause of both a money laundering and a structuring offense, we hold that the district court erred in finding that the seizure of Bouler's property violated his Fourth Amendment rights. Accordingly, the district court's order for the government to return the $57,000 in funds to Bouler was entered in error.
 
 III.
 
 18
 For the reasons stated herein, the district court's order is reversed.
 
 REVERSED
 
 
 [1]
 The transcript of the intercepted phone conversation reads as follows:
 Bouler: George, I got a question.
 George: Sure.
 Bouler: I bet a [expletive deleted] out of about $200,000 right.
 George: Uh-hun.
 Bouler: And he wrote, he wrote it in three different separate cashiers checks. How do I go about getting my money.
 George: Well if you've got cashiers checks.
 Bouler: Yea.
 George: Are you looking not to pay taxes?
 Bouler: Hell yea.
 George: Well you are going to have a hard. Cause if you go to the bank and get cash for it they have to report it to the IRS. Bouler: Right. So how ...
 George: Anything over $10,000 ...
 Bouler: So how, how would I do it.
 George: Well hum ...
 Bouler: Would I deposit it the bank and then bite off of it.
 George: That's what I would do.
 Bouler: Then I deposit it and bite $5,000, $10,000, $20,000 like that. I mean $5,000.
 George: You'd have to keep each time you took a piece out it would have to be under $10,000.
 Bouler: That way I wouldn't have to pay taxes.
 George: Well, they still, if they ever looked at your checking account and wanted to know how you ah, got, I mean you should have got this guy to pay you ah, in cashiers checks under $10,000 each.
 Bouler: Un-hum. Well, well I'm going to tell the[expletive deleted] that it was a personal loan.
 George: Well that's something, if they ever ask you why you deposited that money in the bank. You could tell them that.
 Bouler: Well, cause you know I'm fixin' to buy this other driving range, right? So he loaned me the money to get the driving range.
 George: Well there you go. That's what you can do right there. That might work. I mean I don't know what works and what doesn't you should take to an account about that.
 Bouler: Yea, cause uh ...
 George: But I mean I do know that if you take out more than $10,000 in cash that it has to be reported to the IRS.
 Bouler: Uh-hun ... Well I tell you its, its something.
 George: Well I'm glad you won that kind of money.
 Bouler: Hun?
 George: I said that I'm glad that you won that kind of money. Bouler: Oh yea. Yea, yea, yea. I you know, I had to ah, [expletive deleted]. Every dog, every dog will get a bone somewhere.
 George: I tell you what I wish my golf game was good enough that I could just go out and play for that kind of money.
 Bouler: Well George you know, everybody, ain't everybody don't have what you have.
 
 
 [2]
 Bouler was subsequently indicted on money laundering, drug possession and distribution, and firearms charges, and was convicted on the money laundering and firearms counts. We affirm this conviction today in our decision in the companion case of United States v. James L. Bouler, No. 93-5220/5522 (4th Cir. argued Feb. 8, 1994). See infra n. 7
 
 
 [3]
 Section 981(a)(1)(A) provides for the forfeiture of "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [31 U.S.C. Secs. 5313(a) or 5324(a) ] or of [18 U.S.C. Secs. 1956 or 1957]."
 
 
 [4]
 Section 1956(a)(1) punishes, inter alia,
 Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
 ...
 (B) knowing that the transaction is designed in whole or in part--
 (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of unlawful activity; or
 (ii) to avoid a transaction reporting requirement under State or Federal law....
 Section 1957(a) punishes Whoever ... knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity....
 
 
 [5]
 Section 5324(a) provides that
 No person shall for the purpose of evading the reporting requirements [set forth in 31 U.S.C. Secs. 5313(a), 5325 or the regulations issued thereunder] with respect to such transaction--
 (1) cause or attempt to cause a domestic financial institution to fail to file a report required under [31 U.S.C. Secs. 5313(a), 5325 or the regulations issued thereunder]; [or] ...
 (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.
 
 
 [31]
 C.F.R. Sec. 103.11 provides that
 a person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purposes of evading the reporting requirements under [31 C.F.R. Sec. 103.220].
 
 
 [6]
 Rule 41(e) provides that
 [a] person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to the lawful possession of the property.
 
 
 [7]
 On February 6, 1992, after Bouler filed his motion but before the district court issued its order, Bouler was indicted on charges of money laundering, conspiracy to possess and distribute cocaine, and possessing a firearm while being a convicted felon. The bill of indictment included a criminal forfeiture count seeking, if necessary, substitute assets in lieu of forfeitable assets if the forfeitable assets could not be located after due diligence. See 21 U.S.C. 853(p) (West Supp.1994). After the district court ordered Bouler's $57,000 check returned, the government obtained from the district judge presiding over Bouler's criminal proceeding a protective order under the criminal indictment which froze the money pending Bouler's criminal prosecution. J.A. at 210-14. Bouler was subsequently convicted on the money laundering and firearms counts, and those convictions were, as noted, supra note 2, affirmed in No. 93-5220/5522
 Bouler's $57,000 could potentially be forfeited pursuant to Bouler's criminal conviction as substitute assets. This does not, however, moot the government's appeal in this case, for it is presently unclear, and is likely to be for some time, whether the $57,000 at issue in this case will be needed as a substitute forfeitable asset pursuant to Bouler's criminal conviction. The validity of the district court's order returning Bouler's $57,000 check therefore remains a live controversy.
 
 
 [8]
 Although Bouler brought his motion under Fed. R.Crim. 41(e), the district court held that Rule 41(e) is inapplicable in the civil forfeiture context. The district court derived its jurisdiction over Bouler's motion, filed before any forfeiture action was pending before the court, from the equitable doctrine of "anomalous jurisdiction." J.A. at 41; see, e.g., In re $67,470.00, 901 F.2d 1540, 1545 (11th Cir.1990). Neither party challenges either the district court's holding that Rule 41(e) is inapplicable or that the doctrine of "anomalous" jurisdiction provided the court with jurisdiction. Because we conclude below that the district court erred in finding the seizure warrant invalid, we do not address the merits of either of these holdings
 
 
 [9]
 Bouler claims that the money was a loan from former basketball star Michael Jordan. The government concedes that the check was from Jordan, but concedes that it constituted gambling proceeds won from Jordan in a high stakes golf match
 
 
 [10]
 A facially valid warrant would be void where the affiant knowingly or with reckless disregard for the truth includes materially false statements in the warrant affidavit. Franks v. Delaware, 438 U.S. 154 (1978). There is, however, no suggestion in the record or by the parties that Agent Coffey had any knowledge at the time she submitted her affidavit that would have caused her to believe that the $57,000 was not drug proceeds
 
 
 [11]
 It appears to us, in fact, that the government attempted at the evidentiary hearing to clarify that it was not abandoning its theory of probable cause, but was interrupted by the district judge. After agreeing with the judge that the $57,000 check did not represent drug proceeds, the government's attorney began to explain, "but this does not change--and when this was presented to Magistrate...." Before counsel could complete his sentence, he was interrupted by the court. J.A. at 96